TIMOTHY COURCHAINE
United States Attorney
District of Arizona
JENNIFER A. CORBET
California Bar No. 208241
LINDSAY SHORT
Arizona State Bar No. 034125
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Ste. 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Jennifer.Corbet@usdoj.gov
Lindsay.short@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-23-01293-002-PHX-GMS |
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT'S PSR OBJECTION AND SENTENCING MEMORANDUM** |
| v. | |
| Thvoughn Lynden Curry, | |
| Defendant. | |

The United States, through undersigned counsel, responds to Defendant Thvoughn Lynden Curry's objection to the draft Presentence Investigation Report (PSR) and submits its sentencing recommendation.

First, the Court should overrule Defendant's objection to the two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(17)(A); AHCCCS qualifies as a "financial institution" and the enhancement is appropriately applied. (Doc. 168.)

Second, the United States has no legal or factual objections to the draft PSR. The draft PSR calculates the total Offense Level at 32, Defendant's criminal history category at I, and the applicable guideline range as 121 to 151 months, reduced to the statutory maximum of 120 months. (PSR ¶¶ 46–54, 88.) The PSR recommends a variance to a 107-month sentence. (PSR at 27.)

For the reasons outlined in this sentencing memorandum, the United States agrees with the Probation Officer and recommends a 107-month sentence followed by three years of supervised release. The United States also requests that the Court order restitution in the amount of $12,360,053.46, and a special assessment of $1,200.

## I.    FACTUAL BACKGROUND

The Court, having presided over a bench trial, is certainly familiar with the facts in this case. *See* Doc. 146 (FOF & COL). In brief, husband and wife Thvoughn and Alexis Curry defrauded AHCCCS (the Arizona Health Care Cost Containment System), Arizona's Medicaid agency, out of more than $12 million in just over two years of billing. They defrauded AHCCCS in two primary ways.

First, they lied on the front end to enroll as an AHCCCS provider. Alexis Curry signed and submitted an AHCCCS enrollment packet stating that she had a 100% ownership interest in, and was the only employee of, their entity, 1 Family Clinic LLC ("1FC"). She also represented that any individual with an ownership or controlling interest in 1FC had no "convictions or any pending proceedings (such as an indictment, pending plea, or investigation) that could result in any sanction, conviction, or action taken against the individual or entity." (Gov. Ex. 1 at 5-14.) The application packet also contained various requirements for providers to follow—all of which Mrs. Curry agreed to, and affirmed that the information was true and accurate. (Gov. Ex. 1 at 20).

At the time she submitted the application, though, Thvoughn Curry had an outstanding arrest warrant for two state felony charges involving fraud. (Gov. Ex. 25.) The Currys knew it, as seen in their text messages, including when Thvoughn texted Alexis on August 27, 2020, "Warrants last for 4 years right? …Asking cause we 2 yrs in…It will drop off soon." Alexis confirmed, "Yes." (Pl.'s Ex. 36 at 141767-68.)

As shown at trial, Thvoughn Curry was heavily involved in 1FC, including in day-to-day operations and joint control (with Alexis) of the 1FC bank accounts. The Currys purposefully left Thvoughn off the AHCCCS application to hide his criminal activity. As a result, 1FC was a fraud from the outset.

Second, as detailed in the Court's Findings of Facts and Conclusions of Law, the Currys consistently engaged in fraudulent billing practices. In particular, the Currys routinely billed in a consistent billing formula, across AHCCCS members, with no correlation to any (purported) services actually rendered. And on average, after calculating for all billings submitted by the Currys from February 2021 through March 2023, 1FC billed an average of 9.6 hours of face-to-face services, plus 2.7 hours of case management service, per day per member—resulting in an average of 12.3 hours of service, seven days a week (and giving the Currys the benefit of the doubt that they provided services on Sundays, despite purporting not to on their AHCCCS application). (Gov. Ex. 68 at 141879-85).

In total, 1FC sought $12,776,465.75 from AHCCCS in billing reimbursements from February 2021 to April 2023. (Gov. Ex. 4). AHCCCS ultimately paid 1FC $12,360,053.46 for services claimed to have been rendered. (Gov. Ex. 66 at 141935).

The Currys communicated with each other about all aspects of the business, including bank account information; the AHCCCS user name and password; the need for more clients; billing codes; and the billing "formula," among other topics. (Gov. Ex. 36.)

Defendants spent much of the AHCCCS money for their own personal benefit, including a 2021 Range Rover, a 2021 Ram 1500, a vehicle from Earnhardt Buick GMC, a 2022 Mercedes LT GLE 43 C4, a 2019 Lamborghini Urus, a 2022 Ram 1500, and multiple properties, including the home at which they now live, valued at nearly $800,000.

The grand jury returned a 26-count Superseding Indictment against both defendants on August 6, 20204. (Doc. 54.) The government proceeded at trial with one count of Conspiracy (18 U.S.C. § 1349); one count of Wire Fraud (18 U.S.C. §§ 1343, 2); three counts of Health Care Fraud (18 U.S.C. §§ 1347, 2); and eight counts of Transactional Money Laundering (18 U.S.C. §§ 1957, 2) against both defendants.

After a four-day trial, this Court found both defendants guilty of all counts except the Wire Fraud count. Sentencing is scheduled for June 1, 2026.

## II.    RESPONSE TO DEFENDANT'S OBJECTION TO THE PSR

Defendant's only guideline objection relates to the two-level enhancement for deriving more than $1,000,000 in gross receipts from one or more financial institutions under U.S.S.G. § 2B1.1(b)(17)(A).[1] (Doc. 168.) Defendant argues that AHCCCS is not a "financial institution" as defined and that the enhancement is incorrectly applied.

The government does not agree. AHCCCS qualifies as a "financial institution" because that definition includes an "insurance company, … any health, medical, or hospital insurance association; …[or] associations that undertake to provide pension, disability, or other benefits (*e.g.,* medical or hospitalization insurance) to large numbers of persons." U.S.S.G. § 2B1.1 cmt. n.1.  AHCCCS is Arizona's Medicaid agency, funded by both the federal and state governments, and provides healthcare services to low-income Arizonans (i.e., a "large number of persons). (PSR ¶ 11.) Although AHCCCS is not a bank or other similar entity that perhaps first comes to mind as a "financial institution," it fits squarely within the definition provided in the Guidelines.

In addition, to the extent that Mr. Curry raises any such objection, it is incorrect to say that the enhancement is duplicative given that Defendant is already receiving enhancements under § 2B1.1(b)(1)(K) (loss amount) and § 2B1.1(b)(7)(A) and (B)(ii) (loss to a government health care program exceeding $7,000,000). These enhancements do not unduly punish Mr. Curry; rather, the Ninth Circuit has confirmed that applying multiple enhancements to the same conduct is permissible when each enhancement accounts for a "different aspect of the harms" caused by the defendant's conduct. *United States v. Stoterau,* 524 F.3d 988, 1001 (9th Cir. 2008). *See also United States v. Thornton,* 511 F.3d 1221, 1228 (9th Cir. 2008) (applying two enhancements to same conduct permissible because each "stemmed from separate concerns") (citation omitted).

The same can be said here. The 20-level enhancement for a loss greater than $9.5 million—indeed, in this case, larger than $12 million—under § 2B1.1(b)(1)(K) accounts

---

[1] Defendant also includes a "blanket" objection to the PSR's Offense Conduct. The government agrees with the draft PSR's factual recitations.

for the sheer volume of the loss in this case and the extent of Defendants' fraud. The three-level enhancement under §§ 2B1.1(b)(7)(A) and (B)(ii) applies to health care fraud offenses involving health benefits funded in whole or in part by the federal and state government. *See* U.S.S.G. § 2B1.1 cmt. n.1 (defining "government health care program"). And, independently, a two-level enhancement is appropriate for deriving more than $1,000,0000 from a "financial institution" to account for the significant harm and potential jeopardy to a single institution—here, AHCCCS—that undertakes to provide services to a large number of persons. U.S.S.G. §§ 2B1.1(b)(7)(A) and (B)(ii); 2B1.1 cmt. n.1.[2]

AHCCCS is a "financial institution" as defined in the guidelines' Commentary, and each of the three guidelines enhancements are appropriate and independently warranted. The Court should overrule Defendant's objection and apply the enhancement.

## III.    SENTENCING GUIDELINES

Probation calculated Defendant's offense level as follows:

| | | |
|---|---|---|
| • U.S.S.G. §§ 2S1.1(a)(1) & 2B1.1(a)(2) | Base Offense Level | 6 |
| • U.S.S.G. § 2B1.1(b)(1)(K) | Loss Amount over $9.5M | +20 |
| • U.S.S.G. § 2B1.1(b)(7)(A) & (B)(ii) | Federal Healthcare Offense | +3 |
| • U.S.S.G. § 3B1.3(b)(17)(A) | $1M+ from Financial Inst. | +2 |
| • U.S.S.G. § 2S1.1(b)(2)(A) | 18 USC §1957 conviction | +1 |
| | **Total Offense Level  =** | **32** |

The government agrees with the PSR's determination that the offense conduct supports each of the guidelines applied. At an offense level of 32, and criminal history category of I, Defendant's recommended guideline range is 121-151 months of imprisonment. As the maximum term of imprisonment on each count is 10 years, the guideline range is reduced to 120 months. (PSR ¶ 88.)

---

[2] While there does not appear to be much case law on the specific issue, of note, a similar objection was recently rejected in *U.S. v. Britney Renee Gooch*, CR-24-01794-002-PHX-KML. *See* Docs. 73, 76.

**IV.     A 107-month sentence is sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a).**

The Federal Sentencing Guidelines make up the "starting point and the initial benchmark" in all sentencing decisions. *Gall v. United States*, 552 U.S. 38, 49 (2007). Because the guidelines are advisory, a sentencing court may impose whatever sentence it deems "reasonable" after determining the applicable guideline range and considering the factors outlined in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008). A Guidelines sentence will generally be considered reasonable. *Id.*

In this case, a very modest variance at the low end of the guidelines balances the nature, circumstances, and seriousness of the offense with the history and characteristics of Defendant. It also promotes respect for the law, affords adequate deterrence to criminal conduct, and avoids creating unwarranted sentencing disparities.

### i.     Nature, circumstances, and seriousness of the offense, § 3553(a)(1)

This offense involved a substantial fraud against AHCCCS, the State's Medicaid agency. Rather than provide legitimate services to low-income Arizonans, the Currys defrauded the system to get rich. Specifically, Mr. Curry obfuscated his involvement in 1FC by having his wife and co-defendant, Alexis Curry, lie on the AHCCCS application to omit his involvement and, consequently, his outstanding warrant, knowing that it may have jeopardized AHCCCC's approval of their application.  And as evidenced at trial, Mr. Curry, known to 1FC clients as "Mr. T.," was frequently at the office and known to be an owner of 1FC. (FOF & COL ¶ 37.) He was also directly involved in billing—often texting Alexis Curry billing codes, asking questions about her billing practices, sending photographs of the billing he was doing, and the billing "formula." (*See, e.g.,* FOF & COL ¶ 70-82.)

The harm was also not purely financial. Although AHCCCS is technically the only victim in this case, Defendant's conduct preyed on vulnerable, low-income Arizonans with real treatment and rehabilitation needs. Defendants housed the majority of their members at homes across the Valley. There, they were largely unsupervised. Former employee

Daniel Brown testified that he had to go to the homes multiple times when clients were drinking alcohol. (FOF & COL ¶ 45.) One employee was fired for allegedly sexually abusing a 14-year-old resident (which was communicated to the Currys, but not to law enforcement). (PSR ¶ 22.)

Medical records also indicate that multiple "patients" overdosed and experienced health emergencies while at 1FC. For example, on June 28, 2021, American Medical Response responded to a call regarding C.A. (Count 5). C.A. had been drinking on the other side of the 1FC clinic building,[3] where C.A. was found unresponsive and covered with significant burns and in "obvious distress." She later stated that she used drugs (believed to be heroin) and drank alcohol that day. *See* Ex. 1.

Another individual, F.C. (Count 8), was found unresponsive at the back of 1FC on January 25, 2023. He was not breathing and as a result, emergency personnel administered Narcan to revive him. He was transported to the hospital for a suspected fentanyl overdose—again, while receiving treatment at 1FC. *See* Ex. 1.

As AHCCCS stated in its victim impact statement, the defendants targeted an "already vulnerable population." (PSR ¶ 41.) Rather than help them, they likely actually harmed many of their purported patients.

This offense was extremely serious. Mr. Curry's critical role in the offense warrants a serious, lengthy conviction.

### ii.   The Characteristics of the Defendant, § 3553(a)(1)

Defendant's personal history and characteristics are a mixed bag. His criminal history, while not extensive, indicates that Defendant has a habit of defrauding others for his own personal gain. In 2017, at age 25, he purchased $367.31 in items from Costco, knowing that the account did not have sufficient funds to do so. (PSR ¶ 58.) One year later, he used a fraudulent Social Security number and card to lease a vehicle. (PSR ¶ 59.) (This was the conduct resulting in the warrant at issue in this case.) Combined with the

---

[3] 1FC was located at 1550 E. McKellips Road, Suite 110, Mesa, Arizona, 85203; C.A. was found at 1151 E. McKellips Road.

scheme at issue, following shortly thereafter, it appears that Mr. Curry is quick to lie to enrich himself. He was also unwilling to provide financial information in connection with the PSR, meaning that the government and the Court are unable to assess his ability to pay. (PSR ¶ 86.) His continued self-employment with his wife and co-defendant is also concerning in light of the offense. (PSR ¶ 82.)

On the other hand, aspects of his personal history and characteristics are mitigating. Mr. Curry appears to have experienced significant difficulties in his childhood. (PSR ¶ 72.) He has five children and is the stepfather to one. (Of note, the Currys' youngest child was born more than a year after the they were charged with the instant offense.)  Defendant is also a citizen of the Bahamas; he may be placed in removal proceedings following his release from custody. While his personal history and characteristics may justify a very modest departure below the guidelines, they do not warrant the significantly reduced sentence recommended by Defendant.

### iii.    Need for Deterrence and to Promote Respect for the Law, § 3553(a)(2)

The recommended sentence adequately addresses both specific and general deterrence. Specific deterrence is an important consideration given Defendant's motivation to commit the crime—which appears to be based on greed. The Currys texted each other about things taking a month-long vacation with a $50,000 budget; that they "need half a mill a week," and, in response to Mrs. Curry texting about AHCCCS approving billings, Mr. Curry responded, "[expletive] yeah We rich [expletive]." (PSR ¶ 25, 26.) The Currys spent their money on lavish purchases including a large home and multiple cars, including nearly $300,000 on a Lamborghini. (PSR ¶ 37.)

General deterrence is also particularly important in this case. The Currys stole a massive amount of money from AHCCCS in just over two years. As AHCCCS stated in its victim impact statement, this conduct led to a depletion of resources for Medicaid recipients, which is "an already vulnerable population." (PSR ¶ 41.) As a result of the Currys' actions and others engaged in similar schemes, AHCCCS has endured additional losses to combat a "large scale behavioral health crisis." (PSR ¶ 41.)

A lengthy sentence is necessary. Given the regrettably high number of AHCCCS fraud cases, would-be Medicaid fraudsters need to be aware that the consequences of such actions will significantly outweigh the benefits.

### iv.    *Avoiding unwarranted sentencing disparities, § 3553(a)(6)*

The recommended 107-month sentence avoids unwarranted sentencing disparities with other defendants in similar circumstances. On balance, the various aggravating and mitigating factors in this case support a sentence slightly below with a guideline calculation. This reflects national sentencing norms and ensures that Defendant is not treated significantly more favorably or harshly than offenders across the United States.

## V.    RESTITUTION

The government requests that Defendant be ordered to pay restitution to the victim AHCCCS in the amount of $12,360,053.46, jointly and severally with the co-defendant. (PSR ¶ 99.)

## VI.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court impose a sentence of 107 months on each count, to run concurrently, followed by three years of supervised release.

Respectfully submitted this 18th day of May, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Lindsay Short*
JENNIFER A. CORBET
LINDSAY SHORT
Assistant U.S. Attorneys